HERSHNER HUNTER LLP
Amanda M. Walkup, OSB 934508
180 E. 11th Avenue
Eugene, Oregon 97401
Telephone: 541.686.8511
Facsimile:  541.344.2025
awalkup@hershnerhunter.com

GIBSON, DUNN & CRUTCHER LLP
Randy M. Mastro, NYSB 1792548
Kristen L. Hendricks, NYSB 4544441
[*Pro Hac Vice Applications pending*]
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035
rmastro@gibsondunn.com
khendricks@gibsondunn.com

*Attorneys for Petitioner Chevron Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

|  |  |
|---|---|
| CHEVRON CORPORATION,<br><br>Petitioner,<br><br>To Issue Subpoenas For The Taking Of Depositions And The Production Of Documents | Case No. 11-7003-AA<br><br>**APPLICATION OF CHEVRON CORPORATION FOR AN ORDER PURSUANT TO 28 U.S.C. §1782 TO CONDUCT DISCOVERY FROM ENVIRONMENTAL LAW ALLIANCE WORLDWIDE FOR USE IN FOREIGN PROCEEDINGS** |

Based upon the accompanying Memorandum of Law and the accompanying Declaration

of Kristen L. Hendricks, Chevron Corporation ("Chevron") respectfully applies to this Court for

an Order, pursuant to 28 U.S.C. § 1782 ("Section 1782"), and Rules 26, 30, 34, and 45 of the

Federal Rules of Civil Procedure, granting this application to serve respondent Environmental

CHEVRON'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Law Alliance Worldwide ("ELAW"), an environmental law and science consultancy located in the District of Oregon, with the subpoena attached to this Application as Attachment A.

The requirements of Section 1782 are met by Chevron's Application. First, Respondents reside or may be found in the District of Oregon. Second, the discovery sought is for use in proceedings currently pending before two foreign tribunals, each of which is sufficient, alone, to satisfy the requirements of Section 1782: (1) *Maria Aguinda y Otros v. Chevron Corporation*, on appeal from the February 14, 2011 judgment of the Superior Court of Nueva Loja, in Lago Agrio, Ecuador (the "Lago Agrio Litigation"), and (2) *Chevron Corporation and Texaco Petroleum Company vs. The Republic Of Ecuador*, an arbitration claim under the Bilateral Investment Treaty between the United States and Ecuador pending in the Permanent Court of Arbitration in the Hague (the "Treaty Arbitration"). *See In re Veiga*, No. 1:10-mc-371-CKK, 2010 WL 4225564 at *5 (D.D.C. Oct. 20, 2010). Third, as a litigant in both of those proceedings, Chevron is an "interested person" within the meaning of Section 1782.

The discretionary factors set out by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249 (2004), also weigh in favor of granting this Application. Respondent is not a "participant" in either the Lago Agrio Litigation or the Treaty Arbitration. Both arbitral tribunals and Ecuadorian courts have historically been receptive to Section 1782 assistance from federal courts, as a number of United States District courts have recognized. *See In re Compania Chilena de Navegacion*, No. 03-CV-5382-ERK, 2004 U.S. Dist. LEXIS 6408, at *12-13 (E.D.N.Y. Jan. 29, 2004); *In re Applic. of Noboa*, Nos. M18-302, M19-111, 1995 U.S. Dist. LEXIS 14402, at *4–6 (S.D.N.Y. Oct. 3, 1995); *In re Applic. of Oxus Gold PLC*, No. MISC 06-82-GEB, 2007 WL 1037387, at *5 (D.N.J. Apr. 2, 2007); *Ukrnafta v.*

CHEVRON'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

*Carpatsky Petroleum Corp.*, No. 3:09-mc-265 (JBA), 2009 WL 2877156, at *4 (D. Conn. Aug. 27, 2009); *Norfolk S. Corp. v. Gen. Sec. Ins. Co.*, 626 F. Supp. 2d 882 (N.D. Ill. 2009).

 An applicant under Section 1782 need not show that the evidence sought would be discoverable or admissible in the foreign jurisdiction. *Intel*, 542 U.S. at 261. Rather, in determining whether a petition is an effort to circumvent foreign proof-gathering restrictions, the consideration for a district court is whether the discovery is being sought in bad faith. *Minatec Fin. S.A.R.L. v. SI Group Inc.*, No. 1:08-cv269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008). In this case, Chevron's request for discovery is a good faith effort to obtain probative evidence that is not unduly intrusive or burdensome. The discovery requested goes to central issues in both foreign proceedings and would be permitted under the Federal Rules of Civil Procedure which govern actions under Section 1782. *See, e.g., London v. Does 1-4*, 279 Fed. App'x 513, 515 (9th Cir. 2008) (discovery sought from non-participant in foreign proceeding appropriate where evidence sought may be unattainable by the foreign court while it is within the district court's jurisdiction and accessible in the United States, is not an attempt to avoid foreign evidence rules, and is not unduly intrusive or burdensome). Courts have recognized that Chevron is not attempting to circumvent foreign proof-gathering restrictions in either of the foreign proceedings in requesting discovery under Section 1782. *See, e.g., In re Veiga*, 2010 WL 4225564 at *10.

 Chevron has a pressing need for this discovery. On February 14, 2011, the Ecuador trial court issued a judgment against Chevron in the amount of $18.2 billion. Chevron appealed on March 9, 2011, and a decision on the appeal could come at any time. Thus Chevron must act promptly to obtain this critical evidence and expeditiously submit it to the appellate court before a decision is rendered. Accordingly, Chevron respectfully requests that this Court grant it leave to

CHEVRON'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

issue the subpoena attached hereto as Attachment A, taking notice that said subpoena has been

properly served, in accordance with Rule 45, on ELAW when served as an attachment to this

Application.

DATED: November 1, 2011                Respectfully submitted,

By: *Melissa Matella* for #090735
                                        Amanda M. Walkup, OSB 934508

HERSHNER HUNTER LLP
Amanda M. Walkup, OSB 934508
180 E. 11th Avenue
Eugene, Oregon 97401
Telephone: 541.686.8511
Facsimile: 541.344.2025
awalkup@hershnerhunter.com

GIBSON, DUNN & CRUTCHER LLP
Randy M. Mastro, NYSB 1792548
Kristen L. Hendricks, NYSB 4544441
[*Pro Hac Vice Applications pending*]
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
rmastro@gibsondunn.com
khendricks@gibsondunn.com

*Attorneys for Petitioner Chevron Corporation*

CHEVRON'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Oregon

| | |
|---|---|
| In re Application of Chevron Corp. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| Environmental Law Group Worldwide | ) |
| | ) (If the action is pending in another district, state where: |
| *Defendant* | )                                              ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Environmental Law Alliance Worldwide ("ELAW"), c/o Registered Agent: Michael Axline
1877 Garden Avenue, Eugene, OR 97403

✔ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Hershner Hunter, LLP | Date and Time: |
|---|---|
| 180 East 11th Avenue Eugene, OR 97401 | 11/30/2011 9:00 am |

The deposition will be recorded by this method:  Stenographic, audio, and visual means

✔ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See Exhibit A attached hereto.  Documents responsive to the requests in Exhibit A should be produced at the offices of Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, New York 10035, by 10:00 a.m. on November 18, 2011.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 11/1/11

CLERK OF COURT                                    OR
                                                         *Milo Matilla #092735*
_____              _____
*Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Chevron Corporation
_____ , who issues or requests this subpoena, are:
Kristen L. Hendricks, Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, New York 10166
Telephone: (212) 351-4051, Email: KHendricks@gibsondunn.com

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*    Environmental Law Alliance Worldwide

was received by me on *(date)* _____ .

    ❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

    ❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**ATTACHMENT A**

DOCUMENTS TO BE PRODUCED

DEFINITIONS

1.      "RESPONDENT" means and refers to Environmental Law Alliance Worldwide ("ELAW") and its current and former subsidiaries, affiliates, partners, local partners, "AMIGOS" and "AMIGAS" (whether current, former, active, inactive, nominated or otherwise prospective), officers, directors, employees, representatives, agents, and any other PERSON acting, or purporting to act, on their behalf, and any predecessors or successors of the foregoing.

2.      "1782 ACTIONS" means and refers to legal proceedings pursuant to 28 U.S.C. §1782 seeking discovery RELATING TO the LAGO AGRIO LITIGATION, including but not limited to such actions filed by CHEVRON, the ROE, and by or on behalf of the LAGO AGRIO PLAINTIFFS.

3.      "AAA LITIGATION" means and refers to the case of *Republic of Ecuador v. ChevronTexaco Corp.*, 04 Civ. 8378 (S.D.N.Y.).

4.      "AGREEMENTS" means and refers to any agreement, contract, understanding, quid pro quo or exchange of value contemplated, negotiated, or discussed between or amongst any parties, regardless of whether or not the agreement was communicated or finalized.

5.      "AGUINDA LITIGATION" means and refers to the case of *Aguinda et al. v. Texaco Inc.*, 93 Civ. 7527 (S.D.N.Y.), and all related appellate proceedings.

6.      "ALIANZA PAIS" means and refers to the political party of President Rafael Correa, also known as Patria Altiva / Soberana, and includes all officers, elected officials, campaign managers, strategists, financiers, and agents of or associated with ALIANZA PAIS.

7.      "AMAZON DEFENSE FRONT," "THE FRONT," "FRENTE DE DEFENSA DE LA AMAZONIA," "FDA," "ADF," "AMAZON DEFENSE COALITION," and "FRENTE"

mean and refer to the organization known as Frente De Defensa De La Amazonía A/K/A Amazon Defense Front, and includes the Front's members, partners, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, assigns, or any other PERSON or entity acting, or purporting to act, on the Front's behalf, either directly or indirectly.

8.    "AMIGO," "AMIGA," "AMIGOS," and "AMIGAS" mean and refer to any individual or group belonging to ELAW's network of lawyers and other professionals working to protect the environment through law.

9.    "ASSEMBLY OF THE AFFECTED" means and refers to the organization or organizations variously known as the "Assembly of Communities Affected by Chevron/Texaco," the "Assembly of Delegates of Communities Affected by Chevron/Texaco," the "Assembly of People Affected by Texaco," the "Assembly of People Affected by Chevron," the "Asamblea de los Afectados por Texaco," and the "ADAT," which purports to represent the LAGO AGRIO PLAINTIFFS and the people in the FORMER CONCESSION AREA in regards to the LAGO AGRIO LITIGATION, and includes all committees, sub-committees, working groups and other affiliated, supervisory and subsidiary bodies related thereto, and specifically includes the Ecuadorian corporate entity formed on or about January 25, 2011 called Asamblea de los Afectados por Texaco.

10.    "BIT ARBITRATION" means and refers to the arbitration currently pending in the Permanent Court of Arbitration, the Hague, Netherlands, filed by CHEVRON and TEXPET under the U.S.-Ecuador Bilateral Investment Treaty.

11.    "BURFORD" means and refers to Burford Capital Limited and its associated entities, including but not limited to Burford Group Limited and Treca Financial Solutions, and

any current and former subsidiaries, affiliates, partners, officers, directors, employees, representatives, agents, and any other PERSON acting, or purporting to act, on their behalf, and any predecessors or successors of the foregoing.

12.    "CABRERA" means and refers to the Lago Agrio Court-Appointed Expert Richard Stalin Cabrera Vega.

13.    "CABRERA REPORT" means and refers to the "Technical Summary Report," submitted under the name of Engineer Richard Stalin Cabrera Vega, Expert For The Court Of Nueva Loja, filed with the Lago Agrio Court on or about April 1, 2008, and the November 2008 Responses To The Plaintiffs' Questions Concerning The Expert Report, submitted under the name of Engineer Richard Stalin Cabrera Vega, and any drafts, parts, sections, or annexes of those documents.

14.    "CABRERA WORKPLAN" means and refers to the June 25, 2007 filing by CABRERA entitled "Work Plan for Expert Determination" and any parts, sections, or annexes of the Cabrera Workplan.

15.    "CHEVRON" means and refers to Chevron Corporation and its current and former subsidiaries, affiliates, partners, officers, directors, employees, representatives, agents, and any other PERSON acting, or purporting to act, on their behalf, and any predecessors or successors of the foregoing.

16.    "CHEVRON LITIGATIONS" means and refers to any one or all of the LAGO AGRIO LITIGATION; the AGUINDA LITIGATION; the JOTA LITIGATION; the ROE LITIGATION; the AAA LITIGATION; the BIT ARBITRATION; the 1782 ACTIONS; and the CRIMINAL CASES.

17.   "CO-CONSPIRATORS" means and refers to those acting in concert with the LAGO AGRIO PLAINTIFFS, including but not limited to Joseph Kohn; KOHN SWIFT & GRAF; CABRERA; Joshua Lipton; David Chapman; William Powers; Atossa Soltani; Amazon Watch; Rainforest Action Network; Alberto Wray; Cristóbal Bonifaz; E-Tech International; Karen Hinton; Russell DeLeon; BURFORD; Emery Celli Brinckerhoff & Abady LLP; Motley Rice LLC; Patton Boggs LLP; Juan Pablo Sáenz; Julio Prieto; and H5.

18.   "COMMUNICATION" has the full meaning ascribed to it in Rule 26.3 of the Local Rules for the United States District Court for the Southern District of New York and shall include the transmittal of information (in the form of facts, ideas, inquiries or otherwise) in any form, including but not limited to conversation, telephone, telegraph, electronic mail, postal mail, instant message, social networking message, and facsimile.

19.   "CRIMINAL CASES" means and refers to all investigations or other proceedings RELATED TO actual or potential criminal accusations or charges RELATING TO the LAGO AGRIO LITIGATION or the factual allegations therein.  This definition includes without limitation all investigations or other proceedings RELATED TO the following documents: Comptroller General of Ecuador Genaro Peña Ugalde's Criminal Complaint filed with the Prosecutor General of Ecuador on October 29, 2003; Prosecutor General Mariana Yépez Andrade's Order Initiating the Preliminary Investigation for Environmental Crimes and Fraud issued on May 10, 2004; Prosecutor General of Ecuador Cecelia Armas's Motion to Dismiss the Fraud Charges filed in the Criminal Division of the Supreme Court of Ecuador on August 9, 2006; Public Prosecutor of Pichincha Marianita Vega Carrera's Motion to Dismiss the Environmental Crimes Charges filed in the Third Criminal Court of Napo on September 4, 2006; Order Requesting Comptroller General's Opinion on Prosecutor General Armas's Motion to

Dismiss the Fraud Charges issued by the Supreme Court of Justice on October 27, 2006;

Prosecutor General Jorge German's Motion to Dismiss Criminal Case filed in Supreme Court of

Justice on March 1, 2007; Comptroller General Carlos Polít Faggioni's Motion Requesting that

the Criminal Case Remain Open filed in the Supreme Court of Justice on May 18, 2007; Order

Requiring Prosecutor General to Reissue Opinion issued by Supreme Court of Justice on June

11, 2007; Prosecutor General Jorge German's Motion to Dismiss Criminal Case filed in Supreme

Court of Justice on June 14, 2007; District Prosecutor Washington Pesántez's Opinion Affirming

the Motion to Dismiss the Environmental Crimes Charges (March 13, 2007); Order Dismissing

the Environmental Crimes Charges issued by the Third Criminal Court of Napo on March 16,

2007; Prosecutor General Washington Pesántez's Notice Reopening the Investigation for

Falsification of Public Documents based on New Evidence issued on March 25, 2008; Prosecutor

General Washington Pesántez's Notice Ordering the Initiation of the Prosecutorial Investigation

issued on August 26, 2008; Judge Roberto Gómez Mera's Order Noticing the Initiation of the

Prosecutorial Investigation issued on September 19, 2008 in the Supreme Court of Justice;

Prosecutor General Alfredo Alvear Enríquez's Order Adding New Sites to Investigation issued

on May 13, 2009; Environmental Engineer William Bedón's Expert Report Site Inspection filed

with the Prosecutor General's Office on August 25, 2009; and the Prosecutor General Alfredo

Alvear Enríquez's Accusation Opinion of Rodrigo Pérez and Ricardo Veiga issued on April 29,

2010.

20.    "DATABASES" means and refers to data stored in spreadsheet files, flat-file

database files, geodatabase files, geographic information systems ("GIS") and relational database

files, as well as all versions, variants, reports, exported files or subsets thereof.

21.    "DOCUMENT" has the full meaning ascribed to it in Rule 34 of the Federal
Rules of Civil Procedure and Rule 26.3 of the Local Rules for the United States District Court
for the Southern District of New York and shall include all originals of any nature whatsoever
and all non-identical copies thereof, whether different from the originals by reason of any
notation made on such copies or otherwise, including but not limited to all writings in any form,
notes, memoranda, manuals, reports, records, correspondence, drawings, graphs, charts,
photographs, phone records, data compilations of whatever nature (including those from which
information can be obtained or translated if necessary), audio tapes, electronic mail messages
and electronic data (including any exchange of information between computers, all information
stored in an electronic form or computer database, and all forms and formats of storage).

22.    "DONZIGER & ASSOCIATES" means and refers to Donziger & Associates,
PLLC, and its current and former parents, subsidiaries, affiliates, partners, officers, directors,
employees, representatives, agents, including Steven Donziger, and any other PERSON acting,
or purporting to act, on their behalf, and any predecessors or successors of the foregoing.

23.    "ELAW" means and refers to the organization entitled Environmental Law
Alliance Worldwide as described on the website:  http://www.elaw.org/, and includes without
limitation its predecessors, parents, affiliates, subsidiaries, officers, directors, board members,
managers, attorneys, employees, agents, representatives, consultants, or any other PERSON or
entity acting for, at the direction of, or on behalf of ELAW.

24.    "EMA" means and refers to the Ley de Gestión Ambiental, Codification 2004-
019, also known as the Environmental Management Act, enacted by the Ecuadorian National
Congress.

25.    "FORMER CONCESSION AREA" means and refers to the area within the Oriente District of Eastern Ecuador in which TEXPET conducted petroleum exploration and production operations between 1964 and June 1990.

26.    "JOTA LITIGATION" means and refers to the case of *Jota v. Texaco Inc.*, 94 Civ. 9266 (S.D.N.Y.), and all related appellate proceedings.

27.    "KOHN SWIFT & GRAF" means and refers to Kohn Swift & Graf, P.C., and its current and former parents, subsidiaries, affiliates, partners, officers, directors, employees, representatives, agents, and any other PERSON acting, or purporting to act, on their behalf, and any predecessors or successors of the foregoing.

28.    "LAGO AGRIO COURT" means and refers to the Provincial Court of Justice of Sucumbíos in Lago Agrio, Ecuador.

29.    "LAGO AGRIO JUDGMENT" means and refers to the February 14, 2011 judgment of the Provincial Court of Justice in Sucumbíos in the LAGO AGRIO LITIGATION, including both the fact of the judgment itself and the judicial opinion issued in support of the judgment.

30.    "LAGO AGRIO LITIGATION" means and refers to the case of *Maria Aguinda y Otros v. Chevron Corporation*, in the Provincial Court of Justice of Sucumbíos in Ecuador, and Chevron's pending appeal from the LAGO AGRIO JUDGMENT.

31.    "LAGO AGRIO PLAINTIFF ACTIVISTS" means and refers to PERSONS who plan, organize, fund, or carry out protests, rallies, media events, campaigns, or other activities intended to promote awareness of the LAGO AGRIO LITIGATION and related issues, including but not limited to Amazon Watch; Atossa Soltani; Kevin Koenig; Mitchell Anderson; Esperanza

7

Martinez; Simeon Tegal; Michael Brune; Leila Salazar; Han Shan; Rainforest Action Network;
Acción Ecológica; and the Yes Men.

32.    "LAGO AGRIO PLAINTIFF CONSULTANTS" means and refers to any and all
PERSONS or organizations retained by the LAGO AGRIO PLAINTIFFS or any PERSON
affiliated with the LAGO AGRIO PLAINTIFFS for purposes related to analysis of
environmental harm, personal injury, remediation, compensation or other disputed issues in the
LAGO AGRIO LITIGATION.  This includes without limitation, STRATUS; E-Tech
International; 3TM International, Inc.; Uhl Baron Rana & Associates; Juan Cristóbal Villao
Yépez; Ann Maest; Douglas Beltman; Charles Champ; Richard ("Dick") Kamp; Laura Belanger;
Richard Clapp; William Powers; Joshua Lipton; David Chapman; Mark Quarles; Carlos
Beristain; David Russell; Global Environmental Operations, Inc.; Adolfo Maldonado; Miguel
San Sebastian; Rocio Santillan; Ximena Echeverria; Fausto Penafiel; Tania Naranjo; Fausto
Moreano; Lorena Gamboa; Tatiana Egüez Larrea; Falika Ranil Senanayake; José David Torres
Gallardo; Carlos Eduardo Cerón Martínez; José Javier Egas Cadena; José Nelson Gallo Velasco;
Manuel Pallares Carrion; Forest Garden Products Inspection and Certification Limited; H5; and
the POST-CABRERA CLEANSING CONSULTANTS.

33.    "LAGO AGRIO PLAINTIFF JUDICIAL INSPECTION EXPERTS" means and
refers to all people or organizations retained by the LAGO AGRIO PLAINTIFFS or any
PERSON affiliated with the LAGO AGRIO PLAINTIFFS for purposes of serving as an expert in
the judicial inspection process of the LAGO AGRIO LITIGATION, including but not limited to
Dr. Charles Calmbacher; Jennifer Bilbao Garcia; Édison Camino Castro; Oscar Miguel Davila
Benitez; Orlando Manuel Felicita Nato; Xavier Alonso Grandes Zambonino; Jose Robalino

8

Hidalgo; Amaury Mauricio Suarez Rivera; Luis Alberto Villacreces Carvajal; Francisco Viteri Santamaria; and Fabian Alberto Mora Orozco.

34.    "LAGO AGRIO PLAINTIFF LABORATORIES" means and refers to all laboratories that the LAGO AGRIO PLAINTIFFS hired, contracted with, paid, or otherwise relied upon in relation to the CHEVRON LITIGATIONS, including the Selva Viva Laboratory; HAVOC; the Pontificia Universidad Católica Del Ecuador (a.k.a. CESAQ-PUCE, SESAQ); Corporación de Laboratorios Ambientales del Ecuador CORPLABEC S.A. (a.k.a. CORLAB; CORPLAB); Analytical Services, Inc. (ASI); CalScience Environmental Laboratories, Inc.; Analytical Environmental Services, Inc.; and Suelos LABSU Laboratory at Colegio Camboa del Coca.

35.    "LAGO AGRIO PLAINTIFF LAW FIRMS" means and refers to any law firm or lawyer providing professional services to the LAGO AGRIO PLAINTIFFS, any of the NEW YORK ACTION RICO DEFENDANTS or CO-CONSPIRATORS, or any party adverse to CHEVRON in any of the CHEVRON LITIGATIONS, including but not limited to Steven Donziger; LAW OFFICES OF STEVEN R. DONZIGER; DONZIGER & ASSOCIATES; Joseph Kohn; KOHN SWIFT & GRAF; Patton Boggs LLP; Motley Rice LLC; Emery Celli Brinckerhoff & Abady LLP; Constantine Canon LLP; Brownstein Hyatt Farber Schreck LLP; Recht Kornfeld PC; Horowitz Forbes LLP; Law Offices of Cristóbal Bonifaz; Burke O'Neil LLC; Wheeler Trigg O'Donnell LLP; Aguirre, Morris & Severson, LLP; Freedman Boyd Hollander Goldberg Ives & Ducan, PA; Dow Golub Remels & Beverly; Roberts & Stevens; Neidl & Asociados; Stein, Sperling, Bennett, De Johng, et al; Slater Tenaglia; Tobar & Bustamante; Purrington Moody Weil LLP; Juan Pablo Sáenz; Julio Prieto; Alejandro Ponce Villacís; Alberto Wray; Monica Pareja; Pablo Fajardo Mendoza.

36.    "LAGO AGRIO PLAINTIFF LOBBYISTS" means and refers to all PERSONS retained by or otherwise cooperating with the NEW YORK ACTION RICO DEFENDANTS for the purposes of providing lobbying services, including but not limited to Ben Barnes and the Ben Barnes Group; James Carville; James Sharp; Wayne Gibbons; Thomas Downey and the Downey McGrath Group; Teddy Downey; and Willie Lewis Brown, Jr. and Willie Brown Inc.

37.    "LAGO AGRIO PLAINTIFF RELATED PARTIES" means and refers to the NEW YORK ACTION RICO DEFENDANTS; CO-CONSPIRATORS; THE FRONT; ASSEMBLY OF THE AFFECTED; LAGO AGRIO PLAINTIFF LAW FIRMS; LAGO AGRIO PLAINTIFF CONSULTANTS; PURPORTED CABRERA TEAM; LAGO AGRIO PLAINTIFF LABORATORIES; LAGO AGRIO PLAINTIFF LOBBYISTS; LAGO AGRIO PLAINTIFFS PUBLIC RELATIONS CONSULTANTS; LAGO AGRIO PLAINTIFF ACTIVISTS; and any other PERSON working for or on behalf of the LAGO AGRIO PLAINTIFFS.

38.    "LAGO AGRIO PLAINTIFFS" means and refers to Defendants Alfredo Donaldo Payaguaje Payaguaje; Angel Justino Piaguaje Lucitante; Armando Wilfrido Piaguaje Payaguaje; Beatriz Mercedes Grefa Tanguila; Benancio Freddy Chimbo Grefa; Bertha Antonia Yumbo Tanguila; Carlos Grega Huatatoca; Catalina Antonia Aguinda Salazar; Celia Irene Viveros Cusangua; Clide Ramiro Aguinda Aguinda; Daniel Carlos Lusitande Yaiguaje; Delfin Leonidas Payaguaje Payaguaje; Elias Roberto Piyahuaje Payahuaje; Emilio Martin Lusitande Yaiguaje; Esteban Lucitante Yaiguaje; Fermin Piaguaje Payaguaje; Francisco Alvarado Yumbo; Francisco Matias Alvarado Yumbo; Francisco Victor Tanguila Grefa; Gloria Lucrecia Tanguila Grefa; Guillermo Vicente Payaguaje Lusitante; Heleodoro Pataron Guaraca; Hugo Gerardo Camacho Naranjo; Javier Piaguaje Payaguaje; Jose Gabriel Revelo Llore; Jose Miguel Ipiales Chicaiza; Lidia Alexandra Aguinda Aguinda; Lorenzo Jose Alvarado Yumbo; Lourdes Beatriz Chimbo

Tanguila; Lucio Enrique Grefa Tanguila; Luis Agustin Payaguaje Piaguaje; Luis Armando

Chimbo Yumbo; Luisa Delia Tanguila Narvaez; Maria Victoria Aguinda Salazar; Maria Clelia

Reascos Revelo; Maria Hortencia Viveros Cusangua; Maria Magdalena Rodriguez Barcenes;

Miguel Mario Payaguaje Payaguaje; Narcisa Aida Tanguila Narvaez; Octavio Ismael Cordova

Huanca; Olga Gloria Grefa Cerda; Patricio Alberto Chimbo Yumbo; Patricio Wuilson Aguinda

Aguinda; Reinaldo Lusitande Yaiguaje; Rosa Teresa Chimbo Tanguila; Segundo Angel Amanta

Milan; Simon Lusitande Yaiguaje; and Teodoro Gonzalo Piaguaje Payaguaje.

39.    "LAGO AGRIO PLAINTIFFS PUBLIC RELATIONS CONSULTANTS" means

and refers to all PERSONS retained by or otherwise cooperating with the NEW YORK ACTION

RICO DEFENDANTS for the purposes of assisting with communications with the public or

MEDIA, including but not limited to Karen Hinton; Hinton Communications; Ben Barnes; the

Ben Barnes Group; Kerry Kennedy; Cohen Strategic, LLC; Ken Sunshine; Sunshine, Sachs &

Associates; West Wing Writers; and Christopher Lehane.

40.    "LAW OFFICES OF STEVEN R. DONZIGER" means and refers to The Law

Offices of Steven R. Donziger and its current and former parents, subsidiaries, affiliates,

partners, officers, directors, employees, representatives, agents, including Steven Donziger, and

any other PERSON acting, or purporting to act, on its behalf, and any predecessors or

successors.

41.    "MEDIA" means and refers to any PERSON in the press or publishing business,

including but not limited to journalists, bloggers, news anchors, reporters, and officers, directors

or employees of companies in the media business.

42.    "NEW YORK ACTION RICO DEFENDANTS" means and refers to Steven R.

Donziger; the LAW OFFICES OF STEVEN R. DONZIGER; DONZIGER & ASSOCIATES

11

PLLC; STRATUS; Ann Maest; Douglas Beltman; Pablo Fajardo Mendoza; Luis Yanza; the

AMAZON DEFENSE FRONT; and SELVA VIVA.

43.    "PERSON" means and refers to any natural person or any business, legal or

governmental entity or association of any form.

44.    "PETROECUADOR" means and refers to EP Petroecuador, Empresa Pública

Petroecuador, the Republic of Ecuador's national oil company, including any predecessors,

subsidiaries, operating companies, joint ventures, and related entities thereof.

45.    "PLAINTIFF AFFILIATED PERSON" means and refers to any PERSON

directly or indirectly assisting the LAGO AGRIO PLAINTIFFS in the LAGO AGRIO

LITIGATION, including without limitation PLAINTIFFS' LAWYERS, PLAINTIFFS'

CONSULTANTS, PLAINTIFFS' JUDICIAL INSPECTION EXPERTS, FDA, SELVA VIVA

and the GOVERNMENT OF ECUADOR.

46.    "POST-CABRERA CLEANSING CONSULTANTS" means and refers to the

Weinberg Group; Douglas C. Allen, P.A.; Jonathan Shefftz; JShefftz Consulting; Lawrence W.

Barnthouse; Carlos E. Picone; Daniel L. Rourke; R. Paolo Scardina; Alejandro Garro; Dagmar

Schmidt Etkin; Environmental Research Consultants; Industrial Economics, Inc.; and any other

PERSONS whose work was for the purpose of submitting reports to the LAGO AGRIO COURT

regarding damages assessments in 2010.

47.    "PREPARATION" shall mean all acts involved in preparing the referenced

DOCUMENT, including without limitation drafting, revising, editing, finalizing, translating, and

the like.

48.    "PROVIDE" or "PROVIDED" means to provide, to procure, to render, to furnish,

to make available, to get, or to supply what is desired or needed.

12

49.    "PURPORTED CABRERA TEAM" means and refers to any PERSON identified in any filing in the LAGO AGRIO LITIGATION who purportedly assisted CABRERA, including without limitation any individual identified in Annex V to the Technical Summary Report, By Engineer Richard Stalin Cabrera Vega, Expert For The Court Of Nueva Loja, Expert Opinion, filed with the Lago Agrio Court on or about April 1, 2008, and including without limitation any of the following individuals: Carlos Eduardo Ceron Martinez; Andrea Ximena Echeverria Echeverria; Jose Javier Egas Cadena; Maria Tatiana Eguez Larrea; Jose Nelson Gallo Velasco; Luis Miguel Garcia Aragon; Luis Antonio Gomez Avila; María de Lourdes Larrea Castelo; Carlos Martin Beristain; Claudia Patricia Navarro Perez; Dario Paez Rovira; Falika Ranil Senanayake; Luis Fernando Tonato Quinga; Jose David Torres Gallardo; Juan Cristóbal Villao Yépez; Rocio Santillan.

50.    "RELATED TO," "RELATING TO," "IN RELATION TO," "REGARDING" and "CONCERNING" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, describing, constituting, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

51.    "ROE" means and refers to the governing political body in Ecuador, including without limitation its current and former presidents, attorneys general, judges, other officials, politicians, partners, contractors, employees, servants, representatives, agents, agencies, officers, insurance companies, attorneys, accountants, assigns, or any other PERSON or entity acting, or purporting to act, on the ROE's behalf, either directly or indirectly, including but not limited to Rafael Correa; Martha Escobar; Patricio Garcia; Alexis Mera; Alberto Acosta; Ana Alban; Galo Chiriboga; Rene Vargas Pazos; Judge Alberto Guerra Bastidas; Judge Efrain Novillo Guzmán;

13

Judge Germán Yánez Ricardo Ruiz; Judge Juan Evangelista Núñez Sanabria; Judge Leonardo Ordóñez Pina; Judge Nicolás Augusto Zambrano Lozada; José María Borja; Washington Pesántez; Cecilia Armas Erazo de Tobar; Jorge German; Diego Borja (former Economic Policy Minister); Esperanza Martinez; Diego García Carrión; ALIANZA PAIS; and any current or former Fiscal or Attorney General.

52.    "ROE LITIGATION" means and refers to the case of *Republic of Ecuador v. Chevron Corp.*, Case Nos. 09 Civ. 9958 (S.D.N.Y.), 10 Civ. 0316 (S.D.N.Y.), appealed 10-1020-CV(L), 10-1026(CON) (2d. Cir.).

53.    "SELVA VIVA" means and refers to Selva Viva Selviva Cia, Ltda., and any current and former subsidiaries, affiliates, partners, officers, directors, employees, representatives, agents, and any other PERSON acting, or purporting to act, on their behalf, and any predecessors or successors of the foregoing and any parent, subsidiary, division, or successor entity.

54.    "SELVA VIVA DATABASES" means and refers to all DATABASES prepared, relied upon, or maintained in relation to the CHEVRON LITIGATIONS by the LAGO AGRIO PLAINTIFFS, the LAGO AGRIO PLAINTIFF CONSULTANTS, the LAGO AGRIO PLAINTIFF LAW FIRMS, or any other agent working on behalf of the LAGO AGRIO PLAINTIFFS.  This includes but is not limited to, the DATABASE initially created in or around 2007 by the LAGO AGRIO PLAINTIFFS or their agents and known as the "Base de Datos de Selva Viva del caso de Aguinda v. ChevronTexaco," all DATABASES containing sampling data, contaminant data, and chemical data, all DATABASES containing maps, aerial photos and the locations of purported pits in the FORMER CONCESSION AREA, and all DATABASES identified in section 2.1 of the document titled "Estimated Costs for Remediating Contaminated

Waste Pits from Oil Exploration and Production Activities in the Napo Concession, Ecuador," prepared by STRATUS and 3TM International, Inc. and produced to CHEVRON by Steven Donziger at DONZ00044767.

55.    "STRATUS" means and refers to Defendant Stratus Consulting, Inc. and includes Stratus's partners, executives, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, assigns, or any other PERSON or entity acting, or purporting to act, on Stratus's behalf, either directly or indirectly, whether as an employee or as an independent contractor.

56.    "TEXPET" means and refers to Texaco Petroleum Company.

57.    "TEXPET REMEDIATION AND RELEASE" means and refers to the following AGREEMENTS and the performance of any legal obligation or scope of work contained therein: (1) Memorandum of Understanding between The Government of Ecuador, PETROECUADOR and Texaco Petroleum Company, Dec. 14, 1994; (2) Contract for Implementing of Environmental Work and Release From Obligations, Liability and Claims between the Republic, PETROECUADOR and TEXPET, May 4, 1995; (3) Final Act and Release, Sept. 30, 1998; (4) Statement of Work; and (5) the Remedial Action Plan.

58.    "WORK" means and refers to any writing, analysis, study, report, research, investigation, examination, supervision, guidance, advising, opinion, ideas, calculation, inference, deduction, assumption, conclusion, technique, testing, sampling, or measuring, including any fieldwork, related to the LAGO AGRIO LITIGATION.

59.    "YOU" and "YOUR" refers to RESPONDENT, as well as RESPONDENT's agents, attorneys, and accountants.

60.

15

<u>INSTRUCTIONS</u>

The following instructions shall govern the response and production of DOCUMENTS:

1.    At the time and place of production of the DOCUMENTS requested herein, the DOCUMENTS requested are to be produced in the same order as maintained in the ordinary course of business and in accordance with Rule 45 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1782.

2.    DOCUMENTS shall be produced in their entirety and as they are kept in the ordinary course of business, with all enclosures and attachments, and without abbreviation, redaction, or expurgation.  DOCUMENTS attached to each other, including but not limited to by staple, clip, tape, e-mail attachment, or "Post-It" note, should not be separated.  The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information as to the source and/or location of the DOCUMENTS.

3.    If YOU object to a portion or an aspect of a Document Request, YOU are required to state the grounds for YOUR objection with specificity within 14 days of this Document Request and to respond to any portions of the Document Request concerning which YOU have not propounded such objection.

4.    RESPONDENT shall produce any and all drafts and copies of each DOCUMENT responsive to any Document Request, and all copies of such DOCUMENTS that are not identical, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.

5.    For each DOCUMENT produced, identify the specific Document Request category to which it is responsive.

6.    In the event that any DOCUMENT called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that DOCUMENT is to be

16

identified as completely as possible, including, without limitation, the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, PERSON authorizing the disposal, and the PERSON disposing of the DOCUMENT, and identify its last known location and the reason it is no longer in existence.

7.    If with respect to any Document Request there are no responsive DOCUMENTS, so state in writing.

8.    RESPONDENT shall produce metadata associated with responsive DOCUMENTS and make it reasonably accessible to CHEVRON, including but not limited to producing e-mails that list visible "bcc" recipients and Microsoft Word documents that preserve and reveal any hidden notations, creation or alteration records, and other responsive metadata. This includes metadata that is stored as part of the responsive DOCUMENT, and metadata stored by the file system in which the responsive DOCUMENT is stored.  CHEVRON reserves the right to request the production of native copies of specific responsive DOCUMENTS, including documents where the produced metadata is incomplete.

9.    CHEVRON is willing to meet and confer with RESPONDENT to discuss the logistics of production, but absent an alternative agreement, responsive DOCUMENTS shall be produced in TIFF format with metadata included, subject to the following:

   a.  responsive DOCUMENTS that cannot be produced in TIFF format due to technical reasons shall be produced in a computer-readable and text searchable format to be mutually determined by the parties;

   b.  Microsoft Excel files and other responsive DOCUMENTS that can be meaningfully viewed only in their native electronic format shall be produced in their native electronic format.

10.     If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine, YOU are required to provide a privilege log, specifying for each such DOCUMENT or withheld information: (*i*) the title of the DOCUMENT, if any; (*ii*) the nature of the DOCUMENT, *e.g.*, letter memorandum, telegram, e-mail, etc.; (*iii*) a description of the subject matter of the DOCUMENT; (*iv*) the name, title, and business affiliation of each PERSON who prepared, received, viewed, and/or has or has had possession, custody or control of the DOCUMENT; (*v*) the name of all PERSONS to whom the information in the DOCUMENT was disclosed, such as would enable your privilege claim to be analyzed and adjudicated; (*vi*) the date of the DOCUMENT; and (*vii*) a statement of the basis upon which the privilege or work product claim is made.

11.     If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected. Any DOCUMENT produced in redacted form should clearly indicate on its face that it has been redacted and should be accompanied by an explanation of the basis for the redaction.

12.     The following rules of construction apply to all Document Requests:

    a.     The terms "any," "all," "each," and "every" should be understood in either their most or least inclusive sense as necessary to bring within the scope of the Document Requests all responses that might otherwise be construed to be outside of their scope.

    b.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Document

Requests all responses that might otherwise be construed outside of their scope.

c.  The use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural.

d.  The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the Document Requests all responses that might otherwise be construed to be outside of their scope.

13.   Defined terms may be capitalized for convenience; the definitions herein apply whether or not the term is capitalized.

14.   Except where expressly stated, these Document Requests are not limited in any way by geography.

15.   Except where expressly stated, the relevant time period for these Document Requests is January 1, 2003, through the present.

<u>DOCUMENTS TO BE PRODUCED BY ELAW</u>

1.   All DOCUMENTS RELATED TO any payment, compensation, revenue, or other financial benefit YOU have received, may receive, or expect to receive RELATED TO YOUR WORK CONCERNING the CHEVRON LITIGATIONS or REGARDING the LAGO AGRIO LITIGATION.

2.   All DOCUMENTS RELATED TO any payment, compensation, revenue, or other financial benefit YOU have PROVIDED, may PROVIDE, or expect to PROVIDE RELATED

TO YOUR WORK CONCERNING the CHEVRON LITIGATIONS or REGARDING the LAGO AGRIO LITIGATION.

3.      All DOCUMENTS RELATING TO CABRERA, the CABRERA WORKPLAN, the GLOBAL EXPERT ASSESSMENT, or the CABRERA REPORTS, and any COMMUNICATIONS RELATING TO such DOCUMENTS.

4.      All COMMUNICATIONS between or among YOU and CABRERA or any PERSON that CONTRIBUTED TO the CABRERA REPORTS.

5.      All DOCUMENTS RELATED TO COMMUNICATIONS with the NEW YORK ACTION RICO DEFENDANTS, CO-CONSPIRATORS, the LAGO AGRIO PLAINTIFFS CONSULTANTS and/or any other PERSON, including without limitation Pablo Fajardo Mendoza, Juan Pablo Sáenz, Julio Prieto, Steven Donziger, Karen Hinton, and Isabel Figueroa Sabbadini, RELATED TO CHEVRON or the CHEVRON LITIGATIONS.

6.      All DOCUMENTS RELATED TO COMMUNICATIONS with the LAGO AGRIO PLAINTIFF JUDICIAL INSPECTION EXPERTS.

7.      All DOCUMENTS RELATED TO COMMUNICATIONS with the ROE.

8.      All DOCUMENTS RELATED TO COMMUNICATIONS with PETROECUADOR.

9.      All DOCUMENTS RELATED TO any involvement in drafting, lobbying for, or enactment of any Ecuadorian law or potential legislation by YOU, the LAGO AGRIO PLAINTIFFS, or any LAGO AGRIO PLAINTIFF RELATED PARTIES.

10.      All DOCUMENTS RELATED TO the EMA, including without limitation any lobby or advocacy related thereto.

11.    All DOCUMENTS RELATED TO any position, employment, fellowship, or internship at ELAW of any of the LAGO AGRIO PLAINTIFF LAW FIRMS, including without limitation Pablo Fajardo Mendoza.

12.    All DOCUMENTS created, modified, or accessed by Pablo Fajardo Mendoza on any computer owned, leased, utilized by, or otherwise in the possession, custody, or control of ELAW.

13.    All DOCUMENTS RELATED TO the PREPARATION, proposing, writing, drafting, creation, editing, ghostwriting, or revision of any amicus brief, proposed amicus brief, or other writing RELATED TO the CHEVRON LITIGATIONS, whether or not ultimately filed in any of the CHEVRON LITIGATIONS.

14.    All DOCUMENTS RELATED TO the submission, including the manner of submission, in the LAGO AGRIO LITIGATION of any amicus brief on which ELAW, including without limitation ELAW staff (whether paid or unpaid), AMIGOS, and partners, worked.

15.    All DOCUMENTS RELATED TO the letter from Judge Juan Evangelista Núñez Sanabria, dated July 20, 2009, to Isabel Figueroa Sabbadini, including the form and manner of its receipt.

16.    All DOCUMENTS RELATING TO YOUR retention in the LAGO AGRIO LITIGATION, including without limitation any retention agreement with any of the LAGO AGRIO PLAINTIFFS or the LAGO AGRIO PLAINTIFF LAW FIRMS.

17.    All DOCUMENTS RELATED TO any COMMUNICATIONS with the LAGO AGRIO COURT or any PERSON affiliated therewith, including but not limited to Judge Juan Núñez and others working for him.

18.    All DOCUMENTS RELATED TO any statements or references RELATING TO the LAGO AGRIO LITIGATION used by YOU for purposes of marketing or publicity, including but not limited to any references RELATING TO the CHEVRON LITIGATIONS on any websites or publications RELATED TO YOU.

19.    All DOCUMENTS RELATED TO the state of the Ecuadorian judiciary, courts, or the quality of justice in Ecuador, including but not limited to whether the Ecuadorian judicial system affords impartial tribunals and procedures compatible with due process, and corruption in the Ecuadorian judiciary.

20.    All DOCUMENTS RELATED TO the CRIMINAL CASES.

21.    All DOCUMENTS RELATED TO any alleged fraud with respect to the TEXPET REMEDIATION AND RELEASE.

22.    All DOCUMENTS RELATED TO the signing of the complaint in the LAGO AGRIO LITIGATION and the identities of the LAGO AGRIO PLAINTIFFS.

23.    All DOCUMENTS RELATED TO the writing, drafting, creation, editing, or revision, review, or analysis of any DOCUMENT or draft DOCUMENT or other writing filed with the LAGO AGRIO COURT under the signature of or in the name of CABRERA.

24.    All DOCUMENTS RELATED TO the POST-CABRERA CLEANSING CONSULTANTS.

25.    All DOCUMENTS RELATED TO the writing, drafting, creation, editing, revision, review, or analysis of any DOCUMENT or draft DOCUMENT or other writing filed with the LAGO AGRIO COURT under the signature of, in the name of, or purported to be authored by the POST-CABRERA CLEANSING CONSULTANTS.

26.    All DOCUMENTS RELATED TO SELVA VIVA.

27.    All DOCUMENTS RELATED TO the SELVA VIVA DATABASES, including but not limited to all unique versions of the SELVA VIVA DATABASES and the distribution of the SELVA VIVA DATABASES and any output or reports therefrom.

28.    All DOCUMENTS RELATED TO AMAZON DEFENSE FRONT, including but not limited to any DOCUMENTS RELATED TO the formation, structure, and management of AMAZON DEFENSE FRONT and any payments made by AMAZON DEFENSE FRONT to any PERSON or entity providing any WORK or assistance RELATED TO the LAGO AGRIO LITIGATION.

29.    All DOCUMENTS RELATED TO the proposing, writing, drafting, creation, editing, ghostwriting, advance knowledge, or revision of any order, statement, ruling, report, or other writing RELATED TO the LAGO AGRIO LITIGATION and issued by the LAGO AGRIO COURT, including but not limited to the LAGO AGRIO JUDGMENT, including any commenting or advising as to the content of the same.

30.    All DOCUMENTS RELATED TO the structure or PREPARATION of any Ecuadorian judgment RELATED TO CHEVRON, including without limitation the LAGO AGRIO JUDGMENT.

31.    All DOCUMENTS RELATED TO CHEVRON submitted in any manner, whether on or off the public record, to any court in the Republic of Ecuador, including without limitation the LAGO AGRIO COURT.

32.    All DOCUMENTS RELATED TO research YOU or others performed RELATED TO the CHEVRON LITIGATIONS, including without limitation to any research REGARDING issues of a scientific or technical nature, or REGARDING the U.S. Clean Water

Act, successive corporate liability, or any other aspect of United States, foreign, or international law.

33.     All DOCUMENTS RELATED TO any WORK YOU have performed or have been asked to perform RELATED TO the CHEVRON LITIGATIONS.

34.     All DOCUMENTS RELATED TO any funding provided or offered to YOU by any PLAINTIFF AFFILIATED PERSON RELATED TO any WORK YOU have performed or have been asked to perform RELATED TO the CHEVRON LITIGATIONS.

35.     All DOCUMENTS RELATING TO any WORK by YOU or by any PLAINTIFF AFFILIATED PERSON PROVIDED directly or indirectly to the GOVERNMENT OF ECUADOR.

36.     All DOCUMENTS RELATING TO any WORK by YOU or by any PLAINTIFF AFFILIATED PERSON PROVIDED directly or indirectly to the LAGO AGRIO COURT.