UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHEVRON CORPORATION,                                  11-0691-LAK (S.D.N.Y.)

Plaintiff,

v.                                                            ORDER

MARIA AGUINDA SALAZAR, et al.,

Defendants.

COFFIN, Magistrate Judge:

Chevron Corporation filed this action in the Southern District of New York in February 2011.
During discovery, Chevron served subpoenas on non-parties ELAW and ELAW's director, Bern
Johnson. ELAW is located in Eugene, Oregon, and the subpoenas were issued under this court's
subpoena powers. As a third party to the above captioned litigation, ELAW filed this motion for fees
pursuant to Rule 45 (c)(1) on the grounds that the subpoena was unduly burdensome. For the reasons
discussed below, I grant ELAW's petition in full.

///

///

Page 1 - ORDER

## Background

Because the parties are familiar with the circumstances leading up to the subpoenas, I limit my discussion to the issues immediately relevant to the instant fee petition. An Ecuadorian court issued a large judgement against Chevron in February 2011. Chevron believes that the judgement is illegal and unenforceable. In an attempt to block enforcement of the judgment, Chevron filed this action under the Racketeer Influenced and Corrupt Organizations Act (RICO) as well as other federal and state laws against the U.S. and Ecuadorian attorneys and some of the Ecuadorian plaintiffs involved in the Ecuadorian litigation. As noted above, ELAW is not a party in the RICO lawsuit. ELAW claims that its only "noteworthy involvement" in the underlying Ecuadorian case was to submit an Amicus Curiae brief in June 2009. Chevron claims that ELAW was far more involved in the underlying suit–acting as co-counsel and proving research assistance, review and comments on the fraudulent report that led to the allegedly fraudulent and illegal judgment against Chevron.

Chevron issued a document subpoena which contained nineteen separate requests to ELAW in May 2011. ELAW requested and received an extension of time to respond. ELAW served its responses and objections on Chevron in June 2011. One of ELAW's objections was undue burden and expense. Chevron disagreed with ELAW's objections, and, in early July 2011, the parties had a telephone conference in an attempt to resolve the dispute. The parties discussed a stipulation where ELAW would provide non-privileged documents and a privilege log to Chevron and Chevron would pay ELAW's reasonable attorney fees and costs stemming from the production. The parties finalized the stipulation and a side agreement regarding ELAW's fees and costs on August 1, 2011. ELAW agreed to limit its fees and costs to $19,000 and to provide all non-privileged responsive documents. The stipulation further provided that Chevron would challenge ELAW's privilege log

Page 2 - ORDER

by August 5, 2011. Two days later, on August 3, 2011, ELAW served Chevron with supplemental objections and responses to the May 2011 document subpoena.

The August 5, 2011 deadline for challenges to the privlege log passed without any challenges. On August 10, 2011, ELAW sent Chevron a bill for $19,000, the amount the parties had stipulated that Chevron would pay. Chevron subsequently raised concerns about ELAW's privilege log–claiming, among other things that the log did not sufficiently identify senders and recipients (including those "cc'd" and "bcc'd"). The parties had telephone conferences to discuss these issues on August 11 and 12, 2011. Counsel for ELAW maintained that Chevron's requests regarding the privilege log were untimely under the stipulation, but ultimately answered, as best they could, Chevron's questions about the privilege log. At the end of the August 12, 2011 call, Chevron indicated it would be in touch if it had further questions.

In early September, Chevron served a deposition subpoena on ELAW's director, Bern Johnson. At that time, Chevron had not yet paid ELAW for its fees incurred responding to the documents subpoena. Chevron also requested further clarification regarding ELAW's privilege logs. Chevron requested that ELAW review a list of individuals involved in the Ecuadorean litigation and tell Chevron whether any of those names appeared on any documents listed on the log. According to Chevron, ELAW's counsel stated that ELAW had performed the comparison and would identify the names from Chevron's list, but only after further payment. ELAW asserts that its request for further payment for the comparison was reasonable and supported by case law. Chevron (facing the close of discovery in this action) ultimately agreed to pay for the time spent comparing Chevron's list of "300+" individuals to the privilege log. ELAW also refused to produce Johnson for deposition unless Chevron paid the earlier stipulated fees. Chevron paid on September 13, 2011.

Page 3 - ORDER

Chevron deposed Johnson on September 15, 2011. According to ELAW, Chevron went through the 300+ person list almost name-by-name and asked Johnson if he recognized specific names. ELAW claims that, despite ELAW's requests to limit the deposition to relevant issues, Chevron asked numerous irrelevant questions and misstated testimony, specifically claiming that the misstated testimony was an attempt to support Chevron's perceptions of ELAW's role in the underlying Ecuadoran litigation. The deposition lasted from 9:18 AM to 5:15 PM and included several breaks and a forty-five minute lunch. On September 22, 2011, ELAW requested that Chevron compensate it an additional $21,423 in fees that it had incurred as a result of the deposition subpoena. ELAW asserted that, if it had to draft a fee petition, it would seek fees for the time spent drafting the petition. Chevron refused to pay and ELAW filed this petition.

ELAW argues that Chevron failed in its duty under Fed. R. Civ. P. 45(c)(1) to take "reasonable steps to avoid imposing undue burden or expense on" it. Specifically, it argues that ELAW has been forced to expend its finite resources responding to the subpoenas, answering Chevron's untimely questions and trying to reach solutions with Chevron on a number of issues. Chevron asserts that the document subpoena contained nineteen focused requests for materials relevant to ELAW's involvement in the allegedly fraudulent scheme in the Ecuadoran litigation, that it made considerable efforts to assist ELAW in fulfilling the document subpoena and that it made a good faith attempt to compromise regarding the post-August 5 requests to remedy privilege log deficiencies. According to Chevron, ELAW does not offer any evidence to support a finding that Chevron acted in bad faith and that, instead, ELAW has acted in bad faith by failing to comply with the subpoena.

///

Page 4 - ORDER

## Discussion

Rule 45(c)(1) provides:

> A party or attorney responsible for issuing and serving a subpoena must take
> reasonable steps to avoid imposing undue burden or expense on a person subject to
> the subpoena. The issuing court must enforce this duty and impose an appropriate
> sanction--which may include lost earnings and reasonable attorney's fees--on a party
> or attorney who fails to comply.

According to the 1991 Advisory Committee Notes, Rule 45's sanctions provision was intended

primarily to protect a "non-party witness as a result of a misuse of the subpoena." Fed. R. Civ. P.

45 (c)(1) advisory committee's note (1991). Also, the Ninth Circuit has recognized that non-parties

subject to discovery requests deserve extra protection from the courts, stating:

> Nonparty witnesses are powerless to control the scope of litigation and discovery,
> and should not be forced to subsidize an unreasonable share of the costs of litigation
> to which they are not a party .... [A] witness's nonparty status is an important factor
> to be considered in determining whether to allocate discovery costs on the demanding
> or producing party.

United States v. C.B.S., 666 F.2d 364, 371-72 (9th Cir. 1982) (footnotes omitted); see also, Theofel

v. Farey-Jones, 359 F.3d 1066, 1075 (9th Cir. 2004) (stating that the "subpoena power is a

substantial delegation of authority to private parties, and those who invoke it have a grave

responsibility to ensure it is not abused.") In light of the express language of Rule 45(c)(1) in

combination with this Circuit's stance on protecting non-parties from burdensome discovery

requests, I find that whether Chevron issued the subpoenas in good faith is not relevant to whether

sanctions are appropriate. Instead, the relevant question is whether Chevron took "reasonable steps

to avoid imposing undue burden or expense." Here, I find that Chevron did not take such steps.

The underlying record here, presented largely through ELAW's declarations and attached

exhibits, reveals that ELAW provided over two thousand pages of non-privileged documents and

a privilege log to Chevron. Despite being required by the terms of the stipulation to challenge the privilege log by August 5, 2011, Chevron raised numerous concerns about the log starting after August 10, 2011. Given that the parties had stipulated that challenges to the log were to be made by August 5, 2011 (and, as part of the negotiation for the stipulation, ELAW agreed to forego challenges to what it believed was an invalid subpoena), it was unreasonable for Chevron to continue to request clarification of ELAW's privilege log. It is a reasonable conclusion that Chevron's subpoena for Johnson's deposition was, at least in part, meant to harass. Chevron served Johnson with the deposition subpoena after numerous exchanges between the parties' about clarification of the privilege log. ELAW's counsel requested that Chevron limit or explain the scope of Johnson's deposition, but Chevron declined to do so. Ultimately, Johnson spent an entire day in deposition, part of which consisted of Chevron going through the list of 300+ people name-by-name asking after each if Johnson was familiar with the name. In short, after reviewing the record, I find that Chevron's conduct is sanctionable under Rule 45(c)(1).

Courts imposing a sanction of attorneys' fees under Rule 45(c)(1) have often granted sanctions equaling most if not all of the attorneys' fees sought. See, e.g., Am. Int'l Life Assur. Co. v. Vasquez, 2003 WL 548736, at *3 (S.D.N.Y. Feb. 25, 2003) (concluding that a sanction in the amount of $ 4,436.00, representing "much of" the subpoenaed individual's fees and costs, was appropriate where the subpoena was improperly issued and the issuing party refused to withdraw it); Liberty Mutual Ins. Co. v. Diamante, 194 F.R.D. 20, 23 (D. Mass.2000 (same); Batture Fleet, Inc. v. Browner, 2000 WL 748093, at *2 (E.D.La. Jan. 8, 2000) (same).

After reviewing ELAW's request for fees, I find it to be reasonable. Accordingly, I award ELAW $32, 945.20 for the time incurred thus far on this dispute. This award includes the fees spent

Page 6 - ORDER

drafting the instant fee petition. Moreover, given that I have awarded fees, I will address ELAW's supplemental fee request which counsel emailed to the court on November 29, 2011 after it has been fully briefed.

## Conclusion

I grant ELAW's petition for $32,945.20 in fees. Within fifteen days from the date this order is filed, Chevron shall pay this amount to ELAW. I will address ELAW's November 29, 2011 supplemental fee request after it has been fully briefed.


IT IS SO ORDERED

DATED this 30T day of November 2011.


_____
THOMAS M. COFFIN
United States Magistrate Judge


Page 7 - ORDER